UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELAINE BENJAMIN,

                         Plaintiff,

v.

THE FOSDICK MACHINE TOOL COMPANY,
   et al.,

                         Defendants.
_____

**DECISION AND ORDER**

11-CV-00571-JJM

         This products liability action was commenced in State of New York Supreme Court and subsequently removed to this court on the basis of diversity of citizenship. Notice of Removal [1].[1] Pursuant to 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [104].

         Before me is the motion of defendant Makino, Inc. ("Makino") to exclude the opinion of plaintiff's expert witness, Kevin B. Sevart, P.E., and for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 [105]. Oral argument was held on October 8, 2014 [112].  For the following reasons, the motion is granted.

## BACKGROUND

         Plaintiff seeks to recover for personal injuries sustained on April 11, 2008, when her hand became entangled in a spinning reamer tool attached to an upright drill press manufactured by Makino's predecessor, the Fosdick Machine Tool Company. Amended Complaint [1-1]. The drill press was manufactured in the mid-1940s. Deposition of plaintiff's expert witness, Kevin B. Sevart, P.E. [105-9], p. 31.

_____

[1]       Bracketed references to CM/ECF docket entries.

Mr. Sevart applied a methodology known as "design hierarchy", the purpose of which is to "[e]liminate all hazards, if possible, without unduly compromising function or utility of machine", and as to "hazards [which] cannot be eliminated, provide some form of physical protection or occurred protecting the operator". Sevart Affidavit [109], ¶11. He concluded that the drill press was defective because it "should have been provided with barrier guarding to prevent unintended contact with the rotating components, including the spindle and tool. This barrier could have been interlocked to allow for easy access, but prevent excess while the machine was running". Sevart Report, [105-7], p. 4, ¶1.[2]

In moving for summary judgment, Makino argues that "Sevart's opinions do not meet the standards of reliability set forth in Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). As a result, Sevart's opinions cannot be considered and plaintiff is left with no proof on the essential element of feasible alternative design."  Makino's Memorandum of Law [105-3], p. 5.

Plaintiff suggests that Makino is not entitled to summary judgment because it has failed to offer admissible evidence that the drill press was reasonably safe for its intended use. Plaintiff's Memorandum of Law [110], pp. 3-4. That might be true if this action were still in state court. See  Smith v. Allen, 124 A.D.3d 1128, 1129 (3rd Dept. 2015) ("As the proponents of a motion for summary judgment, it was incumbent upon defendants to "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact").

---

[2]       Although he also opined that the drill press "should have been provided with an emergency stop switch" and with "appropriate warnings and instructions" (id., ¶¶2, 3), plaintiff has now abandoned these claims. See Makino's Reply Memorandum of Law ([111], Point V), confirmed by plaintiff at oral argument [112].

However, "[b]ecause this is a diversity case, we apply state substantive law . . . and federal procedural law", In re Fosamax Products Liability Litigation, 707 F.3d 189, 193 (2d Cir. 2013), and there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (emphasis in original). Instead, once discovery is complete (as in this case), the moving party need merely "demonstrat[e] that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim". Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988).

## ANALYSIS

### A.      Applicable Substantive Law

Plaintiff alleges claims for negligence and strict liability based on defective design.  However, she does not dispute Makino's assertion that those two claims "are considered to be functionally equivalent". Makino's Memorandum of Law [105-3], Point V. Therefore, I need only address her defective design claim.

Under New York law, "[i]n order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107 (1983). To meet her burden, plaintiff must "present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner". Id. at 108. "[T]he

-3-

design of the product in light of the state of the art at the time of production is the issue." Id. at

111.


**B.      Factors Governing the Admissibility of Sevart's Opinion**

"[T]he proponent of expert testimony has the burden of establishing by a

preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied".

United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007), cert. denied, 522 U.S. 1223 (2008).

In order to satisfy that burden, plaintiff must demonstrate not only that Mr. Sevart is qualified to

offer an expert opinion, but also that his opinion is sufficiently reliable, which is a separate

consideration. See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd. 326 F.3d 1333, 1341

(11th Cir. 2003) ("although there is some overlap among the inquiries into an expert's

qualifications [and] the reliability of his proffered opinion . . . these are distinct concepts that

courts and litigants must take care not to conflate").

While Makino challenges Mr. Sevart's expert qualifications (Makino's

Memorandum of Law [105-3], Point II(B)), for purposes of this motion I will assume (without

deciding) that he is qualified to offer an opinion, and focus instead on whether his opinion is

sufficiently reliable.  See Solorio v. Asplundh Tree Expert Co., 2009 WL 755362, *3

(S.D.N.Y. 2009) ("The Court does not deem it necessary to rule on Hyatt's qualifications in this

case, however, because . . . Hyatt's proposed testimony falls far short of being sufficiently

reliable").

"In assessing reliability, the district court should consider the indicia of

reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or

data; (2) that the testimony is the product of reliable principles and methods; and (3) that the

witness has applied the principles and methods reliably to the facts of the case." Williams, 506

F.3d at 160.  "But these criteria are not exhaustive . . . . Daubert enumerated a list of additional

factors bearing on reliability that district courts may consider: (1) whether a theory or technique

has been or can be tested; (2) whether the theory or technique has been subjected to peer review

and publication; (3) the technique's known or potential rate of error and the existence and

maintenance of standards controlling the technique's operation; and (4) whether a particular

technique or theory has gained general acceptance in the relevant scientific community." Id.

   "Daubert's list of specific factors, however, neither necessarily nor exclusively

applies to all experts or in every case." Id. The inquiry is "flexible" (Daubert, 509 U.S. at 594),

there being "no definitive checklist or test" (id. at 593). "In sum, Rule 702 grants the district

judge the discretionary authority . . . to determine reliability in light of the particular facts and

circumstances of the particular case." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 158

(1999).


## C. The Factors As Applied to Sevart's Opinion

### 1. Lack of Testing

   Makino argues that Sevart's opinion is unreliable because he "failed to test his

proposed guard design". Makino's Memorandum of Law [105-3], p. 8. Plaintiff responds that

"the subject drill was decommissioned and scrapped shortly after plaintiff's accident and was

therefore unavailable for any party to inspect or test" (plaintiff's Memorandum of Law [110],

p. 9),[3] and that his failure to test "at most, bear[s] upon the weight the jury may accord to Mr. Sevart's testimony; [it does] not render it inadmissible". Id., p. 6.

As I recognized in Fuller v. Summit Treestands, Inc., 2009 WL 1874058, *5 (W.D.N.Y.), adopted, 2009 WL 1874057 (W.D.N.Y. 2009), lack of testing does not *necessarily* preclude an expert opinion. However, "[w]hile testing is not an absolute prerequisite for an expert's theory of . . . alternative design to be admissible in a design defect case, it is usually critical to show that an expert adhered to the same standards of intellectual rigor that are demanded in their professional work . . . . Adherence to engineering standards of intellectual rigor almost always requires testing of a hypothesis if the expert cannot point to an existing design in the marketplace." Colon ex rel. Molina v. BIC USA, Inc., 199 F.Supp.2d 53, 76 (S.D.N.Y. 2001). *See also* Karnauskas v. Columbia Sussex Corp., 2012 WL 234377, *8 (S.D.N.Y. 2012); Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) ("The failure to test a theory . . . can justify a trial court's exclusion of the expert's testimony").

Thus, if he does not himself test his hypothesis, the expert must at least be able to "identify makers of similar equipment who have already put into use the alternative design that has been proposed". Rypkema v. Time Mfg. Co., 263 F.Supp.2d 687, 692 (S.D.N.Y. 2003); Maxwell v. Howmedica Osteonics Corp., 713 F. Supp.2d 84, 92-93 (N.D.N.Y. 2010). Mr. Sevart could not do so. While opining that "[t]he manufacturer knew or should have known of technically and economically feasible design alternatives that would have significantly reduced the risk without significantly adversely affecting the utility of the machine" (Sevart Report [105-7], p. 3), he could not identify anyone who had actually utilized the alternative design which he

---

[3]       The drill was disposed of by plaintiff's employer, Dresser-Rand Co., not by Makino or its predecessors. Dunaway Affidavit [107-2], ¶16.

proposed. He admitted at his deposition [105-9] that he did not research what types of barrier guards were commercially available for upright drill presses in the 1940s (id., pp. 34, 40), and could not say when manufacturers began to use barrier guards of the type he suggested (id., p. 41). He never spoke to anyone who works with upright drill presses like the one at issue to ask them about utilizing this type of barrier guard (id., p. 47), and had not reviewed any articles concerning the use of barrier guards with upright drill presses (id., pp. 49-50).

Therefore, the "design hierarchy" methodology employed by Mr. Sevart, while perhaps sufficient to identify the nature of the problem to be addressed, does not sufficiently address its solution. See Padillas v. Stork-Gamco, Inc., 2000 WL 1470210 *3 (E.D.Pa. 2000) ("Although the . . . methodology . . . offered by Lambert appears to help an engineer, and perhaps a jury, to decide whether a guard is necessary, the methodology offers no guidance as to whether a particular proposed alternative guard is sufficient. In other words, the methodology Lambert described and utilized in his analysis and report addresses the question of *when* to guard, but gives no guidance as to *how* to guard"); Wagner v. Hesston Corp., 2005 WL 1540135, *3-4 (D.Minn. 2005), aff'd, 450 F.3d 756 (8th Cir. 2006) (rejecting an engineer's alternate design opinion based on the "design hierarchy" where insufficient testing was performed to determine the design's impact on operation of the machine).

## 2.     Reliance upon Patents

Mr. Sevart attempted to bolster his opinion by reference to patents. "A review of patents indicates that drill guarding concepts have existed since 1911. The guards described in the patents were typically telescoping barriers which would  enclose the rotating tool and spindle, but still allow the tool to penetrate the work piece." Sevart Report [105-7], p. 3. Makino

responds that "[p]ointing to the existence of simple patents, however, has been rejected as an unreliable method of assessing feasibility". Makino's Memorandum of Law [105-3], p.11.

I agree. Mr. Sevart admitted that patents can be issued solely based on design, without the necessity of a working model ([105-9], p. 65). He did not know whether the telescoping guard referred to in the patents which he cited had ever been tested for commercial use, much less actually built (id., p. 69). "[T]hat a feature can be patented is a far cry from establishing that it can feasibly . . . be manufactured by a commercial entity." Frazer v. ITW Food Equipment Group LLC, 2013 WL 6164486, *4 (S.D.N.Y. 2013). Moreover, the fact "that one product may feasibly be guarded does not mean that another can". Id. See also Solorio v. Asplundh Tree Expert Co., 2009 WL 755362, *3, n. 5 (S.D.N.Y.2009) ("neither Plaintiff nor Hyatt has offered any evidence to demonstrate . . . whether these patents were actually used to design products similar to the lift at issue here").

Mr. Sevart also refers to a 2001 ANSI (American National Standards Institute) standard for a barrier guard [109-3], arguing that "[t]he general acceptance of guarding techniques depicted [in] those early 1900's patents is evidenced by the striking similarity of the exemplar barrier guard in the current industry standard and those depicted in the patents". Sevart Affidavit [109], ¶17. However, even assuming that the ANSI standard constitutes competent evidence of feasibility of a particular design for a particular product,[4] the fact that the standard was adopted in 2001 sheds no light on whether the design was feasible when the drill press was manufactured, which is the relevant inquiry here. See Frazer, 2013 WL 6164486, *4 ("in the

---

[4]     That assumption is questionable. The standard is promulgated by "B11 Standards, Inc. (the ANSI-accredited standards developing organization", which "does not independently test, evaluate or verify the accuracy or completeness of any information or the soundness of any judgments contained in its standards or guidelines". [109-3], p. 2 of 7.

absence of discussion regarding engineering techniques and manufacturing capabilities at the relevant time, it is speculative to conclude that Defendant could have produced its mixer with a guard in 1988 or 1989 just because it did so in 1994").

## CONCLUSION

"[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric Company v. Joiner, 522 U.S. 136, 146 (1997).

For the foregoing reasons, I conclude that there is "simply too great an analytical gap" between Mr. Sevart's opinion and the data upon which it is based. Therefore, his opinion is inadmissible to prove a design defect; and since plaintiff offers no other evidence to prove such a defect, Makino is entitled to summary judgment. Accordingly, Makino's motion [105] is granted and the Amended Complaint is dismissed, on the merits. The Clerk of the Court shall take the steps necessary to close this case.

Dated: April 22, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-9-